UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WILLIAM C. MAXWELL,                       )
                                          )
                   Plaintiff,             )
                                          )
        v.                                )     No. 1:24-cv-01365-JRS-TAB
                                          )
DAKOTA MICHAEL Officer,                   )
CHELSEY SMITH Officer,                    )
                                          )
                   Defendants.            )

### Order

Plaintiff William Maxwell brings this action against Defendants, Indiana State Police Officers Dakota Michael and Chelsey Smith, alleging violations of 42 U.S.C. §1983 and Indiana common law.  (Second Am. Compl., ECF No. 117-1.)  Maxwell moves the Court to strike certain affirmative defenses, (ECF No. 82), for summary judgment, (ECF No. 83), for an expedited ruling on summary judgment, (ECF No. 112), to compel deemed admissions (ECF No. 134), and for leave to file a surreply, (ECF No. 159).  Defendants move for sanctions and costs, (ECF No. 128), for rule to show cause, (ECF No. 151), and for leave to re-depose Maxwell and for extension of case management deadlines, (ECF No. 154).

### I.    Background

Late in the evening of August 10, 2022, police pulled Maxwell over for an improper car headlight while driving in Crawfordsville, Indiana.  (Second Am. Compl. 2, ECF No. 117-1; Incident Notes, ECF No. 83-1 at 6.)  Defendants were among the officers on the scene.  Officer Smith observed "indications of impairment" including glassy,

bloodshot eyes, the odor of alcohol, and Maxwell's "abusive attitude."  (Smith Aff., ECF No. 83-1, at 4–5.)  A passenger stated that Maxwell had at least one drink that night.  (Michael Body Cam 13:10–27, ECF No. 145-1.)  Smith asked Maxwell to take field sobriety tests.  (Second Am. Compl. 2, ECF No. 117-1.)  Maxwell took the tests, but did not submit to a portable breath test at the site of the stop.  (*Id.* at 3.)  Officer Michael gave Maxwell two more tests.  (*Id.*)  Maxwell reports that he passed all five field sobriety tests despite uneven ground, bright lights in his eyes, and an ankle injury.  (*Id.* at 2–3.)  Smith's affidavit states that he failed the "HGN, Walk and Turn" test.  (Smith Aff., ECF No. 83-1, at 5.)  As the stop extended into the early morning hours of August 11, officers arrested Maxwell for operating while intoxicated. (Second Am. Compl. 3, ECF No. 117-1.)

After his arrest, Smith wrote and signed an affidavit seeking a search warrant to draw Maxwell's blood.  (*Id.*)  According to Maxwell, this affidavit contained false information, including a statement that he refused consent to a blood draw, as well as an incorrect time and date for the stop.  (*Id.*)  Maxwell did refuse at least one request for a chemical test, although he insisted he would pass if tested.  (Smith Body Cam, ECF No. 145-2.)  He also indicated that he had a traumatic brain injury that made one beer feel like six to him, but maintained that he did not drink enough to be impaired even with this condition.  (*Id.* at 1:08–29.)

Michael then transmitted that affidavit.  (Second Am. Compl. 3, ECF No. 117-1.) Maxwell says that the officers did not ask him for his consent until after the affidavit was already transmitted to the judge.  (*Id.* at 4.)  After the officers requested the

2

warrant, Maxwell expressed that he would consent to a blood draw, but was told that it was too late since the judge already received the affidavit.  (Michael Body Cam, ECF No. 145-4.)  Maxwell then requested to take a portable breathalyzer test, which registered a blood alcohol content of 0.016.  (*Id.*; Second Am. Compl. 4, ECF No. 117-1.)  The police incident notes around this time include the words "Rescind OWI." (Second Am. Compl. 4, ECF No. 117-1.)  Officers then executed the search warrant to draw Maxwell's blood.  (*Id.*)

Maxwell was charged with operating a vehicle while intoxicated, possessing paraphernalia, and having a vehicle with improper headlights.  (Information, ECF No. 83-1 at 13.)  A toxicology report issued on May 24, 2023, reflected no positive findings.  (Second Am. Compl. 5, ECF No. 117-1; Toxicology Report, ECF No. 83-1 at 8.)  The case against Maxwell was dismissed on December 14, 2023.  (Order Dismissal, ECF No. 83-1 at 15.)

Maxwell alleges that Smith and Michael seized and arrested him without probable cause, maliciously prosecuted him, and abused legal process.  (Second Am. Compl. 6– 7, ECF No. 117-1.)

## II.    Motion to Strike Certain Affirmative Defenses

In their Answer to Maxwell's first Amended Complaint, (ECF No. 60), Defendants provided several defenses.  (Answer 9–10, ECF No. 78.)  Maxwell moved to strike some of these defenses under Federal Rule of Civil Procedure 12(f).  (ECF No. 82.) Because Maxwell subsequently filed a Second Amended Complaint, (ECF No. 117-1),

his Motion to Strike, (ECF No. 82), is **denied as moot.**[1] *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void.").

### III.   Motion for Summary Judgment

Next, the Court turns to Maxwell's Renewed Motion for Summary Judgment. (ECF No. 83.)   Maxwell filed this Motion after the Court screened his Amended Complaint and allowed "[Section] 1983, malicious prosecution, and abuse of process claims against" Smith and Michael to proceed.   (Screening Order 5, ECF No. 68.) Although Maxwell has since filed his Second Amended Complaint, (ECF No. 117-1), the allegations remain the same as those that survived initial screening: unlawful seizure and arrest in violation of Section 1983, malicious prosecution in violation of Section 1983 and Indiana common law, and abuse of process in violation of Indiana common law, each against Smith and Michael in their individual capacities.   (Second Am. Compl. 6–7, ECF No. 117-1.)

### A.  Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   When reviewing a motion for summary judgment, the Court reviews the record and draws all reasonable

---

[1] The Court need not decide if the Second Amended Complaint also mooted Maxwell's Motion for Summary Judgment since Defendants have not objected otherwise and the allegations under consideration are unchanged.

inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court cannot weigh evidence or make credibility determinations on summary judgment—those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Moreover, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). Evidence, not speculation, is needed to survive summary judgment. *Khungar*, 985 F.3d at 573.

"Under [42 U.S.C.] Section 1983, if a public official violates a person's constitutional rights, that person can sue the public official in their individual capacity." *Neita v. City of Chicago*, 148 F.4th 916, 930 (7th Cir. 2025). "A [Section 1983] plaintiff seeking to prevail on a claim of false arrest must show that he was arrested without probable cause." *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 280 (2024). Probable cause is an absolute defense to an unlawful arrest claim. *Id.*

A malicious prosecution claim under Section 1983 arises when:

> (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which [is] often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in

the       acquittal       or       discharge       of       the       accused.
*Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025) (quoting *Thompson v. Clark*, 596 U.S. 36, 44 (2022)).  The plaintiff also must prove that the malicious prosecution resulted in his seizure.  *Id.*  The elements for malicious prosecution under Indiana common law are similar: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor."  *Midwest Holdings-Indianapolis, LLC v. Hennessy*, 254 N.E.3d 531, 542 (Ind. Ct. App. 2025).

Lastly, an abuse of process claim arises when there is "a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Id.* at 543 (quoting *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016)).  The plaintiff must show "(1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings." *Id.* (quoting *Waterfield*, 61 N.E.3d at 328).  "The intent of the party accused of abusing the legal process is irrelevant if that party's actions were procedurally and substantively proper under the circumstances." *Id.*  "There is no basis for an abuse of process claim if [the] legal process is used to accomplish an outcome that the process was designed to accomplish. The purpose for which the process is used is the only thing of importance." *Id.* (citation modified).

**B. Discussion**

Maxwell offers evidence suggesting that Defendants did not have probable cause to draw his blood and arrest him, including a breathalyzer reading below the legal limit, notes reading "Rescind OWI," and a toxicology report. (Renewed Mot. Summ. J. 3, ECF No. 83.) Maxwell claims that "[t]he undisputed record establishes that Defendants lacked probable cause, disregarded exculpatory information, and subjected Plaintiff to a baseless prosecution." (*Id.* at 12.) Defendants dispute this— they argue that "[t]here was probable cause for . . . Maxwell's blood draw and arrest." (Resp. 2, ECF No. 99.)

Maxwell asserts that the Defendants lacked probable cause for the arrest and ensuing prosecution. (Renewed Mot. Summ. J. 4–8, ECF No. 83.) This includes his abuse of process claim, which despite Maxwell's assertion that it "rests not only on lack of probable cause, but on perverting the legal process to achieve ends for which it was not designed," (*id.* at 7), does not implicate probable cause. "An action for abuse of process 'does not require proof that the action was brought without probable cause.'" *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991) (quoting *Cent. Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986)). The Court will proceed under this standard; namely, that this claim does not rest on lack of probable cause at all.

Police may arrest a suspect without a warrant when supported by probable cause. *United States v. Davis*, 119 F.4th 500, 505 (7th Cir. 2024). "Probable cause to arrest exists when the facts and circumstances that are known to the officer reasonably

7

support a belief that the individual has committed, is committing, or is about to commit a crime." *Doe v. Gray*, 75 F.4th 710, 718 (7th Cir. 2023) (citation modified). Probable cause is based on probabilities and the totality of the circumstances. *Id.* This standard "is not a high bar." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). It "requires only a probability or substantial chance of criminal activity, not an accrual showing of such activity. *Id.* (quoting *Wesby*, 583 U.S. at 57).

Probable cause depends on the elements of the predicate offense under state law. Maxwell was charged with operating a vehicle while intoxicated under Indiana Code § 9-30-5-2(a). (Information, ECF No. 83-1 at 13.) *Id.* "[A] person who operates a vehicle while intoxicated commits a Class C misdemeanor." Ind. Code § 9-30-5-2(a). "'Intoxicated' means under the influence of" alcohol, a controlled substance, another drug or substance, or a combination of substances "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." *Id.* § 9-13-2-86. Operating while intoxicated under Section 9-30-5-2(a) does not require a specific alcohol concentration. *Contrast id.* § 9-30-5-2(a) (any intoxication with any substance) *with id.* § 9-30-5-1(a) (alcohol concentration of 0.08 to 0.15).

Defendants have designated record evidence to support the existence of a dispute over probable cause, including the officers' affidavits. (*See* Resp., ECF No. 99.) Defendants have demonstrated the existence of a dispute of material fact.

Maxwell says there was no basis to find probable cause, but Smith's Search Warrant affidavit states that Smith saw "indications of impairment"—including "[o]dor of alcohol," "[g]lassy eyes," "[b]loodshot / dilated eyes," and "[l]ack of

convergence, [e]yelid trimmors [sic]"—that could suggest intoxication. (Smith Aff., ECF No. 83-1 at 4–5.) Maxwell also states that he passed all field sobriety tests, while the affidavit indicates that he failed one. (*Id.* at 5.) There at least exists a question of fact that would defeat summary judgment in favor of Maxwell on the issue of probable cause.

Similarly, issues of material fact around abuse of process remain. Maxwell has not established an ulterior purpose or a willful act in the use of the process that was improper. *Lindsay*, 574 N.E.2d at 326. He alleges ulterior purposes of "justifying a prior unlawful arrest and delaying [his] access to justice," (Am. Compl. 7, ECF No. 117-1), but does not identify record evidence establishing Defendants acted with these purposes in his Motion. Maxwell claims that the evidence shows Defendants signed and transmitted affidavits, failed to update the search warrant affidavit, executed a search warrant, and continued prosecuting[2] him despite his low BAC. (Renewed Mot. Summ. J. 7, ECF No. 83.) None of these actions establish that Defendants acted with the ulterior purposes Maxwell claims.

Maxwell identifies little that is undisputed. His "Statement of Materials Facts Not in Dispute" establishes that he was stopped, arrested, and then Smith and Michael obtained a search warrant from a judge. (Renewed Mot. Summ. J. 2-3, ECF No. 83.) After they obtained the warrant, Maxwell blew a 0.016 on a breath test, the incident notes included the words "Rescind OWI," Defendants drew Maxwell's blood pursuant to the warrant, Michael then recommended suspension of Maxwell's license,

---

[2] Defendants are police officers, not prosecutors, so it does not appear they even had the ability to institute or continue a suit. *See Neita*, 148 F.4th at 939.

and the toxicology report, which issued about nine months later, eventually showed no alcohol or drugs. (*Id.* at 3.) That leaves several important areas disputed, including whether Maxwell showed indications of impairment and whether he passed or failed any field sobriety tests. Even ignoring the areas of dispute that remain, nothing described here establishes Maxwell's entitlement to judgment as a matter of law. The undisputed facts on their own do not establish that Defendants knew Maxwell was not intoxicated with any substance at the time of his arrest on August 11, 2022. Because Maxwell has failed to establish undisputed facts to support his contention that Defendant's lacked probable cause, or that the Defendants acted with an ulterior purpose, much less that they acted willfully in the use of process not proper in the regular conduct of the proceeding, his Motion for Summary Judgment (ECF No. 83), is **denied**.

### IV.    Motion for Expedited Ruling

Maxwell moved the Court to rule on his Renewed Motion for Summary Judgment before his December 3, 2025 deposition. (ECF No. 112.) That date having come and gone, the Motion is **denied as moot**.

### V.    Motion for Sanctions and Costs

Defendants moved the Court for sanctions and costs after Maxwell refused to answer questions at his deposition. (ECF No. 128.) Maxwell appeared for a videotaped deposition on December 3, 2025, but refused to substantively answer the questions posed by defense counsel. Other than stating and spelling his name, he

responded to questions by stating he was at the deposition under protest, objecting to the proceedings, and pleading Fifth Amendment privilege.  (Tr., ECF No. 129-3.)

In the months before the deposition, he unsuccessfully moved to stay discovery, objected to the deposition, moved for a protective order, and sought emergency relief from the Seventh Circuit Court of Appeals.  (R. & R. 2–3, ECF No. 147.)  In denying Maxwell's objections to Magistrate Judge Baker's orders, the Court determined that his concerns about self-incrimination were unfounded, considering the statute of limitations for the underlying charges had expired.  (*See id.* at 4.)  "There [was] no threat to Maxwell's Fifth Amendment privilege against self-incrimination" at the deposition.  (Order 6, ECF No. 124.)

Maxwell claims he did not have time to read the December 2, 2025, Order before his deposition on December 3.  (Resp. 3, ECF No. 133).  Defense counsel provided a copy during the deposition, as well as a copy of the Court of Appeals' Order.  (Tr. 14:12–14, ECF No. 129-3.)  Defense counsel also attempted to call Magistrate Judge Baker when Maxwell refused to answer questions.  (*Id.* at 12:9–14.)  The Magistrate Judge was unavailable, but had his staff relay that the deposition should proceed and Maxwell should participate.  (*Id.*)  Maxwell continued refusing to participate, including not reviewing exhibits and orders presented to him at the deposition.

Defendants moved for dismissal with prejudice and costs as sanctions.  (ECF No. 128.)  Magistrate Judge Baker concluded that deposition costs were the appropriate sanction in his Report and Recommendation.  (ECF No. 147.)  Maxwell objects to the Report and Recommendation on the grounds that he showed up and stayed through

the deposition, did not intend to frustrate discovery, and was merely confused about who represented whom. (Pl.'s Objs. R. & R., ECF No. 149.)

The Court reviews the Report and Recommendation de novo. Fed. R. Civ. P. 72(b)(3). Sanctions for failing to comply with a discovery order include dismissing the action, striking pleadings, and directing that facts be taken as established. Fed. R. Civ. P. 37(b)(2)(A). The failure must demonstrate "willfulness, bad faith, or fault." *Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011). The Court may also impose sanctions "on a person who impedes, delays, or frustrates" a deposition. Fed. R. Civ. P. 30(d)(2). "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

Maxwell willfully abused the judicial process. The Magistrate Judge, this Court, and the Seventh Circuit all made abundantly clear that he was to answer questions at the deposition. (Minute Order, ECF No. 108; Order, ECF No. 124; USCA Order, ECF No. 126; Tr. 12:9–23, ECF No. 129-3.) His motions and petition to avoid the deposition each failed. (Minute Order, ECF No. 108; Order, ECF No. 124; USCA Order, ECF No. 12.) Even if he did not have time to read the orders of this Court or the Court of Appeals ahead of the deposition as he claims, they were provided to him at the deposition, along with a message from the Magistrate Judge to cooperate, yet he continued to refuse. (Tr. 14:12–14, 12:9–23, ECF No. 129-3.) His assertions that he refused to answer because he was not sure who the lawyer questioning him

12

represented and that he thought that Smith needed to be present are unconvincing, as is his insistence that "Trooper Chelsey Smith" is not the same person as "Defendant Chelsey Smith." (Resp. 4–5, ECF No. 133.) Maxwell knew that Alexander Carlisle represented both Michael and Smith and that neither Defendant would attend the deposition. (Emails, ECF No. 132-1; Tr. 10:5–9.)

Participating in depositions and answering questions are parts of litigating the case that Maxwell himself brought. Parties may take depositions. Fed. R. Civ. P. 30. "Pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Maxwell knew that his claimed fear of self-incrimination was baseless. Indeed, defense counsel read to Maxwell on the record the relevant portion of the Court's Order, (Order 6, ECF No. 124), and provided Maxwell a copy of the Order. (R. & R. 4, ECF No. 147.) He may object to aspects of the deposition, but he still must answer the questions absent an objection that allows him not to respond under the rules. Fed. R. Civ. P. 30(c)(2).

The Court **adopts** the Report and Recommendation. (ECF No. 147.) Defendants' Motion for Sanctions and Costs, (ECF No. 128), is **granted** to the extent Defendants seek to recover "the costs of the deposition transcript and video recording as well as the fees of the court reporter and videographer."

## VI.    Motion for Leave to Re-Depose Plaintiff

Besides seeking sanctions and costs, Defendants also move for leave to depose Maxwell again, to extend discovery by 45 days, and to extend the dispositive motion

13

deadline by 45 or 60 days.[3]  (ECF No. 154.)  As discussed above, Maxwell attended his deposition on December 3, 2025, but did not substantively answer defense counsel's questions.  Magistrate Judge Baker noted that "Defendants should be permitted to file a motion to seek another deposition of plaintiff if they wish to do so." (R. & R. 8 n.3, ECF No. 147.)

Maxwell filed a Response in opposition to this Motion.  (ECF No. 157.)  Defendants followed with a Reply in support.  (ECF No. 158.)  Maxwell moves for leave to file a surreply on the grounds that Defendants' Reply included new case citations "and the new argument that the December 3 deposition should not be considered a 'first deposition' at all."  (ECF No. 159.)  Local rules contemplate surreplies in the context of summary judgment procedure "if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response."  S.D. Ind. R. 56-1(d).  Applying this standard here though outside of summary judgment procedure, additional citations and the argument that "Plaintiff never provided a first deposition of any substance," (Reply 2, ECF No. 158), do not amount to new evidence or an objection to admissibility that would merit a surreply.  Thus, Plaintiff's Motion for Leave to File Sur-reply, (ECF 159), **is denied**.

Leave to depose Maxwell again is appropriate, as his first deposition accomplished none of the purposes of discovery, such as narrowing the issues, obtaining evidence, or securing information about the existence of evidence.  *See* 8 Wright & Miller's

---

[3] The Motion inconsistently requests both a 45-day and a 60-day extension to the dispositive motion deadline.  (Defs.' Mot. Re-Depose 3, ECF No. 154.)  The Court understands Defendants as intending to request the 60-day extension, which would allow them time after discovery closes in which to prepare and file a dispositive motion.

Federal Practice & Procedure § 2001 (3d ed. 2025).  Maxwell baselessly refused to answer the questions posed to him.  Defendants require another deposition for discovery to proceed.  Maxwell must cooperate with ordinary discovery.  Again, he may object to questions or other aspects of the deposition on the record, but he still must answer the objectional questions absent one of the few exceptions under the law.  Fed. R. Civ. P. 30(c)(2).  Continued refusals to participate in discovery may subject Maxwell to further sanctions, including dismissal.

Maxwell's Motion for Leave to File Surreply in Opposition, (ECF No. 159), is **denied**.  Defendants' Motion for Leave to Re-Depose Plaintiff and for Extension of Case Management Deadlines, (ECF No. 154), is **granted**.  Only for Defendants, the discovery deadline is extended to 45 days after entry of this Order, and the dispositive motion deadline is extended to 60 days after entry of this Order.

### VII.   Motion to Compel Deemed Admissions

Maxwell "moves the Court to deem certain facts admitted where Defendants' denials are contradicted," under Federal Rules of Civil Procedure 8(b)(6) and 36(a)(3).  (ECF No. 134.)  Specifically, he takes issue with Defendants' answers to paragraphs 14, 15, 22, and 23[4] of his Second Amended Complaint and with Defendants' affirmative defenses.  (*Id.*)

Defendants filed a Response in opposition.  (ECF No. 140.)  Maxwell filed a Reply.  (ECF No. 148).  Replies must follow responses within seven days.  S.D. Ind. R. 7-

---

[4] The parties both cite paragraphs 14, 15, 22, and 23 but appear to refer to the content of paragraphs 13, 15, 21 and 22 of the Second Amended Complaint.  (Second Am. Compl. ¶¶ 21–23.)  The Court's analysis applies to any of these paragraphs.

1(c)(3)(A). The reply here came three weeks later. Though untimely, the Court will consider Maxwell's Reply although its content of does not impact the Court's analysis here. The Defendants have also filed a Motion to Show Cause, complaining that Maxwell's Motion to Compel contains cases and quotes that do not exist. (*See* Mot. Show Cause, ECF No. 151.)

Federal Rule of Civil Procedure 8(b)(6) discusses the effect of failing to deny an allegation "asserted . . . .by an opposing party." Fed. R. Civ. P. 8(b)(6). Contrary to Maxwell's Motion, Defendants' answers to the Second Amended Complaint do admit or deny the allegations of the Second Amended Complaint, including their answers to the relevant paragraphs. (Answers & Affirmative Defenses 1–8, ECF No. 131). As for Federal Rule of Civil Procedure 36(a)(3), it discusses the effects of not responding to requests for admission. Fed. R. Civ. P. 36(a)(3). However, Maxwell's Motion concerns Defendants' answer to the Second Amended Complaint, not any response to a request for admission. Thus, Rule 36(a)(3) is not relevant.

While the Motion is "pursuant to Fed. R. Civ. P. 8(b)(6) and 36(a)(3)," Maxwell also suggests that Defendants violated Rule 11(b)(4) when they denied facts established by documentary evidence. (Rebuttal & Mot. Compel Deemed Admissions 1, 3, 18, ECF No. 134.) However, a motion for Rule 11 sanctions "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Besides, Rule 11 sanctions would be inappropriate here.

For these reasons, Maxwell's Motion to Compel Deemed Admissions, (ECF No. 134), is **denied**.

16

### VIII.  Motion for Rule to Show Cause

Finally, Defendants move the Court to order Maxwell to show cause why he should not be sanctioned for citations to non-existent cases and quotations.  (ECF No. 151.) Defendants identify twenty-eight quotes that do not appear in the cited cases and nine citations to cases that do not appear to exist at all, for a total of thirty-seven improper citations.  (*Id.* at 3–7.)  Maxwell admits that the quotes from actual cases are incorrect but says that most are "paraphrases," and he describes citations to non-existent or non-locatable cases as "research errors, that were incomplete, not fabrications."  (Resp. 1, 7, ECF No. 152.)

Representations to the Court, including those by an unrepresented party, must be based on real law.  Fed. R. Civ. P. 11(b)(2).  "Research errors" do not explain how Maxwell "researched" non-existent cases, and he does not explain why his "paraphrases" so frequently were presented as direct quotes.  Accordingly, Defendants' Motion for Rule to Show Cause, (ECF No. 151), is **granted**.  Plaintiff is **ordered** to show cause why he is not subject to Federal Rule of Civil Procedure 11(c) sanctions.  The Court hereby **designates** Magistrate Judge Tim A. Baker under 28 U.S.C. § 636(b)(1)(A) to hear and determine whether Maxwell should be sanctioned under Rule 11(c), and if so, determine appropriate sanctions.

### Conclusion

For the above reasons, Plaintiff's Motion to Strike Certain Affirmative Defenses, (ECF No. 82), and Motion for Expedited Ruling, (ECF No. 112) are each **denied as moot**.  Plaintiff's Motion for Summary Judgment, (ECF No. 83), Motion to Compel

17

Deemed Admissions, (ECF No. 134), and Motion for Leave to File Surreply, (ECF No. 159), are each **denied**. The Court **overrules** the objection to, (ECF 149), and **adopts** the Report and Recommendations, (ECF No. 147). Defendants' Motion for Sanctions and Costs, (ECF No. 128), Motion for Rule to Show Cause, (ECF No. 151), and Motion for Leave to Re-Depose Plaintiff and for Extension of Case Management Deadlines, (ECF No. 154), are **granted**.

The Court hereby **designates** Magistrate Judge Tim A. Baker under 28 U.S.C. § 636(b)(1)(A) to hear and determine whether Maxwell should be sanctioned under Rule 11(c) for his citations to non-existent cases and quotations, (*see* Mot. Show Cause, ECF No. 151), and if so, determine appropriate sanctions.

    **SO ORDERED.**

    Date:   3/26/2026

                                                    JAMES R. SWEENEY II, CHIEF JUDGE
                                                    United States District Court
                                                    Southern District of Indiana


Distribution:

WILLIAM C. MAXWELL
201 N. McClure St.
Wingate, IN 47994

Serena Elisa Alway
Office of Indiana Attorney General
serena.alway@atg.in.gov

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Jonathan Freije
Office of Indiana Attorney General
jonathan.freije@atg.in.gov

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov